F. Beard Hobbs (SBN 147652)
BEARD HOBBS & ASSOCIATES APLC
1014 Broadway, Suite A
El Cajon, CA  92021
Telephone:     619.201.8467
Facsimile:     619.749.0656
bhobbs@contractorjustice.com

Attorneys for Use-Plaintiff
**BASIC METALS INDUSTRIES, LLC**

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA – WESTERN DIVISION

| | |
|---|---|
| THE UNITED STATES, for the use and benefit of BASIC METALS INDUSTRIES, LLC, an Arizona limited liability company, | CASE NO. **COMPLAINT** |
| Use-Plaintiff, | |
| vs. | **Claim Amount: $214,167.24** |
| K.O.O. CONSTRUCTION, INC., a California corporation; TRAVELERS CASUALTY AND SURETY COMPANY, a Connecticut corporation; and DOES 1 through 50, | |
| Defendants. | |

COMPLAINT

Use-Plaintiff BASIC METALS INDUSTRIES, LLC, states and alleges:

## JURISDICTION

1.     This Court has jurisdiction of this matter pursuant to 28 U.S.C. § 1331 as a federal question and by virtue of 40 U.S.C. § 270(a) - 270(e) (Miller Act).  BASIC is a claimant pursuant to U.S.C. § 270(a) - 270(e).

## VENUE

2.          1.     Venue is proper in the United States District Court for the Western Division of the Central District of California as the contract was performed, executed and entered within this district as provided by Title 40, U.S.C. § 270(b).

## PARTIES

3.     BASIC METALS INDUSTRIES, LLC ("BASIC") is, and at all times herein mentioned was, an Arizona limited liability company with its principal place of business in the City of Phoenix, State of Arizona.

4.     BASIC is informed, believes, and thereon alleges, that defendant K.O.O. CONSTRUCTION, INC. ("K.O.O. CONSTRUCTION") is, and at all times mentioned herein was, and is now, a California corporation duly organized and existing under and by virtue of the laws of the State of California authorized and doing business in the State of California, with its principal place of business in the City of West Sacramento, County of Sacramento, State of California.

5.     BASIC is informed, believes, and on that basis alleges that defendant TRAVELERS CASUALTY AND SURETY COMPANY ("TRAVELERS") is, and at all times mentioned was, a Connecticut corporation duly organized and authorized to do business in the State of California, acting as a corporate surety on Miller Act bonds as required by the United States of America and its various agencies.

6.     BASIC is informed, believes, and thereon alleges that at all times herein mentioned, each of the defendants sued herein (as Does 1-50) was the agent and employee of each of the remaining defendants and was at all times acting within the course and scope of such agency and employment.

///

1

COMPLAINT

**FACTS**

7.      On or about August 20, 2012, K.O.O. CONSTRUCTION entered into a written contract with the United States of America Veterans Administration ("VA"), pursuant to which K.O.O. CONSTRUCTION was to construct and, furnish labor and materials and perform construction related work for the Renovate Inpatient Mental Health Ward (RIMHW) for that certain work of improvement known as, VA Greater Los Angeles Healthcare Systems, (RIMHW) – Contract No. W912PL-12-C-0020, Project # 691-12-103, City of Los Angeles, State of California ("prime contract").

8.      On or about a date to be determined, K.O.O. CONSTRUCTION as principal, and TRAVELERS, as surety, executed a payment bond number 105797417 on the above-referenced RIMHW - project ("bond") in accordance with the provisions of Title 40 of the U.S.C. § 270(a), guaranteeing payment of all persons having a direct relationship with K.O.O. CONSTRUCTION or a subcontractor of K.O.O. CONSTRUCTION for furnishing labor, materials or both in the prosecution of the work provided for in the prime contract.

9.      The bond was delivered to and accepted by the Government and it inures to the benefit of BASIC.

10.      On or about October 10, 2012, C&T Welding, Inc. and K.O.O. CONSTRUCTION, entered into a written subcontract ("agreement") in which C&T Welding, Inc. agreed to provide labor, equipment, materials, supplies, and/or services to the above referenced project, identified as the RIMHW project.  Among other things, the agreement provided that K.O.O. CONSTRUCTION shall pay the agreed charges for said labor, equipment, materials, supplies, and/or services as provided for therein.   A copy of the subcontract between C&T Welding, Inc. and K.O.O. CONSTRUCTION is attached hereto and incorporated by reference as Exhibit "1".

11.      On or about December 12, 2012, C&T Welding, Inc. and BASIC entered into a written subcontract ("subcontract") in which BASIC agreed to provide labor, equipment, materials, supplies, and/or services to the above referenced project, identified as the RIMHW project.  Among other things, the agreement provided that C&T Welding, Inc. shall pay the agreed charges for said labor, equipment, materials, supplies, and/or services as provided for therein.  A copy of the C&T

2

COMPLAINT

Welding, Inc. and BASIC subcontract is attached hereto and incorporated by reference as Exhibit "2".

12.     Said subcontract labor, materials, supplies and/or services furnished by BASIC in and for the prosecution of said work, was and is $918,957.00, plus change orders.  Only a part of the subcontract price has been paid to BASIC.  There is now due and owing to BASIC $214,167.24, together with interest at the rate of ten percent (10%) per annum from June 6, 2014, until paid.  A copy of a statement showing the outstanding invoice is attached hereto and incorporated by reference as Exhibit "3".

## FIRST CLAIM FOR RELIEF

(On Payment Bond – TRAVELERS, K.O.O. CONSTRUCTION)

13.     BASIC realleges and incorporates herein by reference each and every allegation of paragraphs 1 through 12, as set forth above.

14.     K.O.O. CONSTRUCTION has failed and refused to pay C&T Welding, Inc. monies due it for labor, equipment, material, supplies and/or services furnished by BASIC, as set forth above, despite C&T Welding, Inc. and/or BASIC's repeated demands.

15.     On or about September 04, 2014, BASIC sent its Notice to Contractor, pursuant to Miller Act 40, U.S.C. § 270(a) - 270(e) by first class certified mail.   A copy of the Miller Act Notice is attached hereto and incorporated by reference as Exhibit "4".

16.     A period of more than ninety (90) days has elapsed since the last date on which BASIC received payment for labor, equipment, supplies and/or services from C&T Welding, Inc. and/or K.O.O. CONSTRUCTION.  BASIC has not been paid in full, leaving a balance due, owing, and unpaid from C&T Welding, Inc. and TRAVELERS to BASIC, pursuant to the Miller Act payment bond's provisions, the sum of $214,167.24, together with interest thereon at the rate of ten percent (10%) interest from June 6, 2014, until paid.   BASIC has chosen not to pursue its contract claim against C&T Welding, Inc.

17.     In order to present its claim and prosecute this action, BASIC has been compelled to engage the law firm of Beard Hobbs & Associates to enforce the agreement and prosecute this action.

18.     Pursuant to the terms of the bond, BASIC is entitled to reasonable attorneys' fees incurred in connection with this matter.

WHEREFORE, BASIC prays for judgment as follows:

### ON ALL CLAIMS OF RELIEF AGAINST

### DEFENDANTS  K.O.O. CONSTRUCTION AND/OR TRAVELERS

1.     For the sum of $214,167.24;

2.     For interest thereon at the rate of ten percent (10%) per annum from June 6, 2014, until paid;

3.     For reasonable attorneys' fees; and

4.     For costs of suit incurred herein, and for such other and further relief as the Court deems just and proper.

Dated: September 3, 2015                    **BEARD HOBBS & ASSOCIATES APLC**

By:  /s/ F. Beard Hobbs _____
F. Beard Hobbs
Email:  bhobbs@contractorjustice.com
Attorneys for Use-Plaintiff
BASIC METALS INDUSTRIES, LLC

COMPLAINT

EXHIBIT "1"

| | |
|---|---|
| Signed Contract Back: | Y  N |
| Insurance Cert Back: | Y  N |
| Signed Schedule of Values: | Y  N |
| Signed Standard Form 1413: | Y  N |
| Completed W-9 Form: | Y  N |

# K.O.O. CONSTRUCTION INC
# SUBCONTRACT AGREEMENT

**WITNESSETH:**

**DESCRIPTION OF CONSTRUCTION PROJECT:** Subcontractor agrees to furnish all necessary design, submittals, closeout documentation, labor, materials, tools, equipment and supplies necessary to perform, and to perform all work set forth in "Section 2" hereof in the construction of:

Contract No. W912PL-12-C-0020, Project # 691-12-103
Renovate Inpatient Mental Health Ward,
VA Greater Los Angeles Healthcare System, Los Angeles County

in accordance with the Terms and provisions of the Contract between Owner and Contractor, dated <u>August 20, 2012</u>, including the General and Special Conditions Drawings and Specifications and other Documents forming or by reference made a part of said Contract hereinafter called the General Contract, all of which shall be considered part of this Subcontract by reference hereto, and Subcontractor agrees to be bound to Contractor and Owner by the terms and provisions thereof.

This Agreement is made at ____<u>West Sacramento, CA</u>____ this __<u>10th</u>__ day of <u>October 2012</u>, between:

## CONTRACTOR

Name ____<u>K.O.O. CONSTRUCTION INC</u>____

Address__<u>2510 Boatman Avenue, Suite B</u>__

City ____<u>West Sacramento</u>____     State __<u>CA</u>__   Zip __<u>95691-3816</u>__

Phone ____<u>(916) 371-3388</u>____          Fax ____<u>(916) 371-1188</u>____

and

## SUBCONTRACTOR

Name  <u>C&T Welding</u>

Address  <u>9005 Langes Hill Dr (P.O. Box 258)</u>

City <u>New Castle</u>          State <u>Ca</u>        Zip <u>95658</u>

Phone  <u>(916) 663-1260</u>  Fax    <u>(916) 663-1325</u>

On or about the <u>20th</u> day of <u>August 2012</u>, Contractor entered into a prime contract to perform the following work:

## SECTION 1.  ENTIRE CONTRACT

The phrase "Contract Documents" is defined to mean and include:

The plans, consisting of all bid set Sheets, Specifications, Special and General Conditions, Addenda and

Illustrative Details, this subcontract, the Contract with the General Contractor, and the General Contractor's Prime Contract with the Owner and any attachments included within.

a) The terms "Contract" and "Prime Contract" may be used herein refer to the Contract between the Owner and Contractor for construction of the Project.

b) The term "Contract Documents" as used herein refers to the "Contract" between the Owner and the Contractor, together with all Drawings, Specifications, General Conditions, Supplemental General Conditions, Special Conditions, Addenda, Amendments and all other instruments issued by or on behalf of the Owner and / or prepared by the Architect for the Project, together with all other documents or instruments referred to in the aforesaid "Contract" and "Contract Documents".

c) The term "Subcontract" as used herein refers to this Subcontract together with any exhibits, attachments, or addenda, including without limitation all of the General Terms incorporated herewith and referred to herein.

d) The term "Subcontract Documents" as used herein refers to the "Contract", "Contract Documents" and "Subcontract".

e) In the event of a conflict between any of the Subcontract Documents, the documents shall take precedence in the following order and the one taking precedence controls the one(s) following:

   i) The Contract, together with all Change Orders, modifications and exhibits;

   ii) The Contract Documents in the order listed in the Contract;

   iii) The Subcontract, together with all Change Orders and exhibits, provided, however, the Subcontract shall control when the provisions of the Subcontract require stricter performance by the Subcontractor.

f) Subcontractor specifically agrees to perform in accordance with the provisions of the "Contract Documents"; provided, however, nothing in the Contract Documents shall be construed to limit any and all actual damages that may be incurred by Contractor and recovered by Contractor from Subcontractor as a result of any default by Subcontractor. Subcontractor agrees that he has read the "Contract Documents" and copies were made available for Subcontractor and Subcontractor agrees and acknowledges that he shall similarly make copies of such documents available to his Sub-Subcontractors, if any, and that all such Sub-Subcontractors will agree to be bound by the Contract Documents and Subcontract Documents.

g) The following clauses are incorporated by reference into this subcontract agreement.

- Far Clause 52.228-5 Insurance-work on Government Installation
- Far Clause 52.203-6 Restrictions on subcontractor sales to the Government.
- Far Clause 52.222.23 Equal Employment Opportunity for construction
- Far Clause 52.222-21 Prohibition of Segregated Facilities
- Far Clause 52.222-35 Equal Opportunity for special disabled veterans
- Far Clause 52.223-14 Toxic chemical release reporting
- Far Clause 52.225-11 Buy American Act – Construction materials
- Far Clause 52.225-15 Restrictions on certain foreign purchases
- Far Clause 52.227-1 Authorization and consent
- Far Clause 52.222-4 Contract work hours and Safety Standards Act – Overtime Compensation – Construction
- Payrolls and Basic Records
- Withholding of Funds
- Disputes Concerning Labor Standards
- Davis-Bacon Act
- Apprentices and Trainees
- Compliance with Copeland Regulations
- Far Clause 52.244-2 Subcontracts
- Contract Termination – Debarment
- Certification of Eligibility
- Far Clause 52.232.27 Prompt Payment For Construction Contracts

Subcontractor certifies that he is fully familiar with all of the terms of the Contract Documents, the location of the jobsite, and the conditions under which the work is to be performed and that he enters into this Agreement based upon his investigation of all such matters and is not relying on any opinions or representations of Contractor. This Agreement represents the entire agreement. The Contract Documents are incorporated in this Agreement by reference, and Subcontractor and his subcontractors will be and are bound by the Contract Documents insofar as they relate in any way, directly or indirectly, to the work covered by this Agreement. Subcontractor agrees to be bound to Contractor in the same manner and to the same extent as Contractor is bound to Owner under the Contract Documents, to the extent of the work provided for in this Agreement, and that where, in the Contract Documents reference is made to Contractor, and the work or specifications therein pertains to Subcontractor's trade, craft, or type of work, then such work or specification shall be interpreted to apply to Subcontractor Instead of Contractor.

## SECTION 2. SCOPE OF SUBCONTRACTOR'S WORK

- Subcontractor agrees to furnish all submittals, labor, materials, equipment and other facilities required to perform and complete Division 1 and 5, General Requirements and Structural Steel per Solicitation Documents W912PL-12-R-0025, HMC Architect's plans and specifications dated February 15, 2012, Amendments 1 to 3.

  - ➤ Structural Steel framing per SS210.1
  - ➤ Pipe columns per SS210.1
  - ➤ Wide Flange beams at existing framing per SS210.1
  - ➤ Structural Steel Framing per SS210.2
  - ➤ Channel facia per SS210.2
  - ➤ Wide flange beams per SS210.2
  - ➤ Tube steel braces per SS210.2
  - ➤ Angle framing per SS210.2
  - ➤ Metal deck per SS210.2
  - ➤ AESS finish
  - ➤ Structural steel support at operable partition per SS603
  - ➤ Angle hangers per SS602
  - ➤ Angle braces per SS602
  - ➤ Channel beams per SS602
  - ➤ New structural steel at existing screen per SS603
  - ➤ Tube steel extensions at TS post per SS603
  - ➤ Tube steel post per SS603
  - ➤ Tube headers per SS603
  - ➤ Surface finish : One standard coat of shop primer

**Note: Subcontractor cannot start any on site work until all submittals are submitted and approved; insurance certificates received; all persons employed to work on site must have 10 Hour OSHA Training.**

# Important

**Insurance Certificates in the amount required are necessary before the subcontractor can begin his work on site. This is a certified payroll job. All certified labor reports shall be in our possession and based on the most recent rules and laws as defined by the Federal Department of labor and Far Clause prior to any payment by Contractor. The terms and conditions of this Subcontract supersede any terms, conditions or notations in Subcontractor's bid or proposal unless specifically repeated on our "Supplemental Subcontract Form". Similarly, the terms and conditions of this subcontract supersede any oral and written terms of understanding unless specifically repeated.**

For the project in accordance with the Contract Documents and as more particularly specified in:

See Section 1.  Entire Contract, Above

In the event of any dispute between Contractor and Subcontractor over the scope of Subcontractor's work under the Contract Documents, Subcontractor will not stop work but will prosecute the work diligently to completion, the dispute to be submitted for resolution in accordance with Section 17 below.

## SECTION 3. CONTRACT PRICE

Contractor agrees to pay Subcontractor for the strict performance of his work, the sum of **Two Hundred Ninety Eight Thousand &00 ($ 298,000.00)**, subject to additions and deductions for changes in the work as may be directed in writing by Contractor, and to make payment in accordance with the Payment Schedule, Section 4.;

## SECTION 4.  PAYMENT SCHEDULE

Contractor agrees to pay to Subcontractor in monthly progress payments of _____Ninety_____ percent (_90_%) of labor and materials which have been placed in position, with funds received by Contractor from Owner for work performed by Subcontractor as reflected in Contractor's applications for payment. Such monthly progress payments shall be made (7) days after receipt of payment from the Owner by Contractor.  Final payment to Subcontractor shall be made ten (10) days after the entire work required by the prime contract has

been fully completed in conformity with the Contract Documents and has been delivered to and accepted by Owner, Architect, and subcontractor, with funds received by Contractor from Owner in final payment for work under the prime contract. Subcontractor agrees to furnish, if and when required by Contractor, payroll affidavits, receipts, vouchers, releases of claims for labor, material, and from his subcontractors performing work or furnishing materials under this Agreement, all in form satisfactory to Contractor, and it is agreed that no payment hereunder shall be made, except at Contractor's option, until and unless such documents have been furnished. Contractor, at his option, may make any payment due hereunder by check made payable jointly to Subcontractor and any of his subcontractors, suppliers and material men who have performed work or furnished materials under this Agreement. Any payment made hereunder prior to completion and acceptance of the work, as referred to above, shall not be construed as evidence of acceptance or acknowledgment of completion of any part of any Subcontractor's work. All Payments will be paid based on your approved schedule of values approved on a monthly progress billing as approved by the general contractor. No payments will be made without the prior approval of the general contractor even if previous months conditionals have been sent to our office with a different approval than the owners.

## SECTION 5. <u>TIME</u>

Time is of the essence of this Agreement. Subcontractor shall provide Contractor within 15 days of Letter of Intent scheduling information and a proposed schedule for performance of his work in a form acceptable to Contractor. Subcontractor shall conform to Contractor's progress schedule and all revisions or changes made thereto. Subcontractor shall prosecute his work in a prompt and diligent manner in accordance with Contractor's progress schedule without delaying or hindering Contractor's work or the work of other contractors or subcontractors. Subcontractor shall coordinate the work covered by this Agreement with that of all other contractors, subcontractors, and of the Contractor, in a manner that will facilitate the efficient completion of the entire work. In the event Subcontractor fails to maintain his part of the Contractor's schedule, he shall, without additional compensation, accelerate the work as Contractor may direct until Subcontractor's work is in accordance with such schedule. Contractor shall have complete control of the premises on which the work is to be performed and shall have the right to decide the time and order in which various portions of the work shall be installed and the relative priority of the work of Subcontractor and other subcontractors, and, in general, all other matters pertaining to the timely and orderly conduct of the work of Subcontractor on the premises. Should Subcontractor be delayed in the prosecution or completion of the work by the act, neglect or default of Owner, Architect or Contractor, or should Subcontractor be delayed waiting for materials, if required by this Contract to be furnished by Owner or Contractor, or by damage caused by fire or other casualty for which Subcontractor is not responsible, or by the combined action of the workmen, in no way caused by or resulting from fault or collusion on the part of Subcontractor, or in the event of a lock-out by Contractor, then the time herein fixed for the completion of the work shall be extended the number of days that Subcontractor has thus been delayed, but no allowance or extension shall be made unless a claim therefore is presented in writing to Contractor within 48 hours of the commencement of such delay, and under no circumstances shall the time of completion be extended to a date which will prevent Contractor from completing the entire project within the time allowed Contractor by Owner for such completion.

No claims for additional compensation or damages for delays, whether caused in whole or in part by any conduct on the part of Contractor, including, but not limited to, conduct amounting to a breach of this Agreement, or delays by other subcontractors or Owner, shall be recoverable from Contractor, and the above-mentioned extension of time for completion shall be the sole remedy of Subcontractor; provided, however, that in the event Contractor obtains additional compensation from Owner on account of such delays, Subcontractor shall be entitled to such portion of the additional compensation so received by Contractor from Owner as is equitable under all of the circumstances. In the event that Contractor prosecutes a claim against Owner for additional compensation for any delay, Subcontractor shall cooperate fully with Contractor in the prosecution thereof and shall pay costs and expenses incurred in connection therewith, including actual attorneys' fees, to the extent that said claim is made by Contractor at the request of Subcontractor.

Subcontractor shall prepare and obtain approval as required by the Contract Documents for all shop drawings, details, samples, and do all other things necessary and incidental to the prosecution of his work in conformance with Contractor's progress schedule.

## SECTION 6. <u>CHANGES IN THE WORK</u>

Subcontractor shall make any and all changes in the work described in the Contract Documents and this Agreement as directed by the Contractor 's Project Manager or Branch Manager in writing thru the use of a formal subcontract change order. Such change or written direction shall not invalidate this Agreement.

If necessary, the contract price stated in Section 3 and the time for Subcontractor's performance shall be adjusted by appropriate additions or deductions mutually agreed upon before Subcontractor performs the changed work. Subcontractor shall supply Contractor with all documentation necessary to substantiate the amount of the addition to or deduction from the price or time. If Contractor and Subcontractor cannot agree on the amount of the addition or deletion, Subcontractor shall nonetheless timely perform the work as changed by Contractor's written direction. Once Subcontractor receives Contractor's written direction, Subcontractor is solely responsible for timely performance of the work as changed by the written direction. Changes are subject to the CHANGES Article or Section in the General or Special Conditions of the Specifications, Changes in the Work, and shall include no more than 5% total overhead and profit for changes by

this subcontractor if the total overhead and profit is on a shared basis.

Payment for changed work shall be made in accordance with Section 4.

Subcontractor shall not make any changes in the work described in Section 2 or in any way cause or allow that work to deviate from the Contract Documents without written direction from Contractors. If Subcontractor makes any changes in the work described in Section 2 without written direction from Contractor, such change constitutes an agreement by Subcontractor that he will not be paid for that changed work, even if he received verbal direction from Contractor or any form of direction, written or otherwise, from Owner or any other person or entity. In addition, Subcontractor shall be liable for any and all losses, costs, expenses, damages, and liability of any nature whatsoever associated with or in any way arising out of any such change he makes without written direction from Contractor.

If a dispute arises between Contractor and Subcontractor about whether particular work is a change in the work described in Section 2, Subcontractor shall timely perform the disputed work and may give written notice of a claim for additional compensation for that work. Such written notice of claim must be given within ten (10) days after such work is performed. Subcontractor's failure to give written notice within the ten (10) days constitutes an agreement by him that he will not be paid for the disputed work.

No change, alteration, or modification to or deviation from this Agreement, the Contract Documents, prime contract, plans, or specifications, whether made in the manner provided in this provision or not, shall release or exonerate, in whole or in part, any bond or any surety on any bond given in connection with this Agreement, and no notice is required to be given to such surety of any such change, alteration, modification, or deviation.

## SECTION 7. DAMAGES CAUSED BY DELAYS

If Subcontractor should default in performance of the work described in Section 2 or should otherwise commit any act which causes delay to the prime contract work, Subcontractor shall be liable for all losses, costs, expenses, liabilities and damages, including consequential damages and liquidated damages, sustained by Contractor, or for which Contractor may be liable to Owner or any other party because of Subcontractor's default.

If subcontractor fails to complete the work identified in Section 2 with in the time specified in the contract schedule, the subcontractor shall pay liquidated damages to the contractor in the amount of $1,568.00 for each calendar day of delay until the work is completed or accepted.

## SECTION 8. BONDING OF SUBCONTRACTOR (REQUIRED)    *November 5, 2012*

Concurrently with the execution of this Agreement, Subcontractor shall, subcontract, execute a labor and material bond and performance bond, in an amount equal to one hundred percent (100%) of the Contract Price. Said bonds shall be executed by a corporate surety acceptable to Contractor and shall be in a form satisfactory to Contractor. Contractors shall pay one time only the premium on said bonds unless otherwise provided herein or in the Contract Documents.

## SECTION 9. LIENS

In case suit is brought on any claim or liens for labor performed or materials used on or furnished to the project, Subcontractor shall pay and satisfy any such lien or judgment as may be established by the decision of the court in said suit. Subcontractor agrees within ten (10) days after written demand to cause the effect of any such suit or lien to be removed from the premises, and in the event Subcontractor shall fail so to do, Contractor is authorized to use whatever means in its discretion it may deem appropriate to cause said lien or suit to be removed or dismissed and the cost thereof, together with actual attorneys' fees, shall be immediately due and payable to Contractor by Subcontractor. Subcontractor may litigate any such lien or suit provided he causes the effect thereof to be removed, promptly in advance, from the premises, and shall further do such things as may be necessary to cause Owner not to withhold any monies due to Contractor from Owner by reason of such liens or suits.

It is understood and agreed that the full and faithful performance of this Agreement on the part of Subcontractor (including the payment of any obligations due from Subcontractor to Contractor, and any amounts due to labor or material men furnishing labor or material for said work) is a condition precedent to Subcontractor's right to receive payment for the work performed, and any monies paid by Contractor to Subcontractor under the terms of this Agreement shall be impressed with a trust in favor of labor and material men furnishing labor and material to Subcontractor on the work herein subcontracted.

Should this subcontractor ever place a Lien, Stop Notice or Miller Act Stop Notice against Contractor for any reason, Subcontractor shall take responsibility for all costs associated with this lien and all Contractors administration costs plus reasonable overhead and profit associated to remove lien from the project.

## SECTION 10. PROVISIONS FOR INSPECTION

Subcontractor shall at all times furnish to Contractor and his representatives safe and ample facilities for inspecting materials at the

5

site of construction, shops, factories or any place of business of Subcontractor and his subcontractors and material men where materials under this Agreement may be in course of preparation, process, manufacture or treatment.  Subcontractor shall furnish to Contractor as often as required by Contractor, full reports of the progress of the work at any place where material under this Agreement may be in the course of preparation or manufacture.  Such reports shall show the progress of such preparation and manufacture in such details as may be required by Contractor, including, but not limited to, any plans, drawings or diagrams in the course of preparation.

## SECTION 11.  MATERIALS AND WORK FURNISHED BY OTHERS

In the event the scope of work includes installation of materials or equipment furnished by others or work to be performed in areas to be constructed or prepared by others, it shall be the responsibility of Subcontractor to examine and accept, at the time of delivery or first access, the items so provided and thereupon handle, store and install the items with such skill and care as to insure a satisfactory completion of the work.  Use of such items or commencement of work by Subcontractor in such areas shall be deemed to constitute acceptance thereof by Subcontractor.  Loss or damage due to acts of Subcontractor shall be charged to the account of Subcontractor and deducted from monies otherwise due under this Agreement.

## SECTION 12.  PROTECTION OF WORK

Subcontractor shall effectually secure and protect the work done hereunder and assume full responsibility for the condition thereof until final acceptance by Architect, Owner and Contractor.  Subcontractor further agrees to provide such protection as is necessary to protect the work and the workmen of Contractor, Owner and other subcontractors from his operations.

Subcontractor shall be liable for any loss or damage to any work in place or to any equipment and materials on the jobsite caused by him or his agents, employees or guests.

## SECTION 13.  SUPERINTENDENCE OF WORK

Subcontractor shall supervise his work or appoint someone to supervise all on site work.  Supervision must be maintained 100% for the duration of subcontractors work.  Subcontractor shall provide the name and contact information of the superintendent upon start of work.

## SECTION 14.  LABOR RELATIONS

14.1     Subcontractor shall keep a representative at the jobsite during all times when Subcontractor's work is in progress, and such representative shall be authorized to represent Subcontractor as to all phases of the work.  Prior to commencement of the work, Subcontractor will notify Contractor who Subcontractor's representative is to be, and in the event of any change of representative. Subcontractor shall notify Contractor who the new representative is to be prior to such change becoming effective.

Subcontractor acknowledges that Contractor has entered into labor agreements covering work at his construction job sites with the labor unions listed in Section 25 below and incorporated herein by reference.

Subcontractor agrees to comply with all of the terms and conditions of those labor agreements including trust fund payment into the respective labor trust funds set forth in the respective labor agreements, referred to in Section 25 below insofar as Subcontractor may lawfully do so, and in particular agrees to comply with the terms and provisions of said agreements setting forth the jurisdiction and scope of work claimed by each of such crafts and the procedure contained therein for resolution of jurisdictional disputes.  In the absence of any such procedure, or if such procedure fails to promptly resolve the jurisdictional dispute, Subcontractor agrees, at his own cost and expense, upon request of Contractor, to take any and all lawful steps to secure a binding and final determination of said jurisdictional dispute by the National Labor Relations Board.

Subcontractor acknowledges that terms and conditions of the labor agreements with the unions listed herein below may require that Subcontractor comply with additional labor agreements with unions affiliated with the AFL-CIO but not listed.  When the terms and conditions of the below-referenced labor agreements so require, Subcontractor shall perform his jobsite work pursuant to all terms and conditions of an appropriate labor agreement with a union affiliated with the AFL-CIO.

Should there be picketing on Contractor's jobsite, and Contractor establishes a reserved gate for Subcontractor's purpose, it shall be the obligation of Subcontractor to continue the proper performance of his work without interruption or delay.

Subcontractor further promises and agrees that he will bind and require all of his subcontractors and their subcontractors performing jobsite work of the type covered by any of the labor agreements specified below to agree to all of the foregoing promises and undertakings, to the same effect as herein provided with respect to him.

14.2     Subcontractor shall comply with all equal employment opportunity and affirmative action requirements promulgated by any governmental authority, including, without limitation, the requirements of the Civil Rights Act of 1964.

6

14.3     Subcontractor shall comply with and agrees to be bound by all applicable Federal, State and local laws and regulations, including, but not limited to, all Fair Labor Standards Act provisions and California Labor Code provisions covering the work. Upon request, Subcontractor agrees to submit certified payroll reports to Contractor no later than three (3) working days after labor has been paid.

## SECTION 15.  RECOURSE BY CONTRACTOR

15.1     Failure of Performance

15.1.1     Notice to Cure.  If Subcontractor at any time refuses or neglects to supply enough properly skilled workers and proper materials, or fails to properly and diligently prosecute the work covered by this Agreement, or fails to make prompt payment to his workers, sub-subcontractors or suppliers, or becomes delinquent with respect to contributions or payments required to be made to any health and welfare, pension, vacation, apprenticeship or other employee benefit program or trust, or is otherwise guilty of a material breach of a provision of this Agreement, and fails within forty-eight (48) hours after receipt of written notice to commence and continue satisfactory correction of such default with diligence and promptness, then Contractor, without prejudice to any rights or remedies, shall have the right to any or all of the following remedies:

(a)     Supply such number of workers and quantity of materials, equipment and other facilities as Contractor deems necessary for the completion of Subcontractor's work, or any part thereof which Subcontractor has failed to complete or perform, and charge the cost thereof to Subcontractor, who shall be liable for the payment of same including reasonable overhead, profit, and actual attorneys' fees incurred as a result of Subcontractor's failure of performance;

(b)     Contract with one or more additional contractors to perform such part of Subcontractor's work as Contractor shall determine will provide the most expeditious completion of the total work and charge the cost thereof to Subcontractor; and

(c)     Withhold payment of any monies due Subcontractor pending corrective action to the extent required by and to the satisfaction of Contractor.

In the event of an emergency affecting the safety of persons or property, Contractor may proceed as above without notice.

15.1.2     Termination for Default.  If Subcontractor fails to commence and satisfactorily continue correction of a default within forty-eight (48) hours after receipt by Subcontractor of the notice issued under Section 14.1.1, then Contractor may terminate Subcontractor's right to perform under this Agreement and use any materials, implements, equipment, appliances or tools furnished by or belonging to contractor to complete Subcontractor's work without any further compensation to Subcontractor for such use.  Contractor also may furnish those materials and equipment, and/or employ such workers or subcontractors as Contractor deems necessary to maintain the orderly progress of the work.

In such case, Subcontractor shall be entitled to no further payment until the balance of Subcontractor's work has been completed. At that time, all of the costs incurred by Contractor in performing Subcontractor's work, including a markup of fifteen percent (15%) for overhead and profit on such expenses, plus actual attorneys' fees as provided above, shall be deducted from any monies due or to become due Subcontractor.  Subcontractor shall be liable for the payment of any amount by which such expenses may exceed the unpaid balance of the Contract Price.

15.1.3     Termination for Convenience.  Contractor may at any time and for any reason terminate Subcontractor's services and work at Contractor's convenience.  Cancellation shall be by service of written notice to Subcontractor's place of business.

Upon receipt of such notice, Subcontractor shall, unless the notice directs otherwise, immediately discontinue the work and placing of orders for materials, facilities and supplies in connection with the performance of this Agreement, and shall, if requested, make every reasonable effort to procure cancellation of all existing orders or contracts upon terms satisfactory to Contractor, or at the option of Contractor, give Contractor the right to assume those obligations directly, including all benefits to be derived therefrom.  Subcontractor shall thereafter do only such work as may be necessary to preserve and protect the work already in progress and to protect material and equipment on the jobsite or in transit thereto.

Upon such termination, Subcontractor shall be entitled to payment in accordance with Section 4 only as follows: (1) the actual cost of the work completed in conformity with this Agreement; plus, (2) such other costs actually incurred by Subcontractor as are permitted by the prime contract and approved by Owner; plus (3) overhead and profit as defined in the specifications or if not defined in the specifications no more than (5%) for overhead and profit.  There shall be deducted from such sums as provided in this subparagraph the amount of any payments made to Subcontractor prior to the date of the termination of this Agreement.  Subcontractor shall not be entitled to any claim or claim of lien against Contractor or Owner for any additional compensation or damages in the event of such termination and payment.

15.1.4     Grounds for Withholding Payment.  Contractor may withhold, or on account of subsequently discovered evidence, nullify

7

the whole or part of any payment to the extent necessary to protect Contractor from loss, including costs and attorneys' fees, on account of defective work not remedied; (2) claims filed or reasonable evidence indicating probable filing of claim; (3) failure of Subcontractor to ...e payments properly to his subcontractors or for material, labor or fringe benefits; (4) a reasonable doubt that this Agreement can be completed for the balance then unpaid; (5) damage to another subcontractor; (6) penalties assessed against Contractor or Subcontractor for failure of Subcontractor to comply with State, Federal or local laws and regulations; or (7) any other ground for withholding payment allowed by State or Federal law, or as otherwise provided in this Agreement.  When the above matters are rectified, such amounts as then due and owing shall be paid or credited to Subcontractor.

15.2    Bankruptcy

15.2.1    Termination Absent Cure.  Upon the appointment of a receiver for Subcontractor or upon Subcontractor making an assignment for the benefit of creditors or if Subcontractor seeks protection under the Bankruptcy Code or commits any other act of insolvency, Contractor may terminate this Agreement upon giving forty-eight (48) hours written notice, by certified mail, to Subcontractor and its surety, if any.  If an order for relief is entered under the Bankruptcy Code with respect to Subcontractor, Contractor may terminate this Agreement by giving forty-eight (48) hours written notice, by certified mail, to Subcontractor, its trustee, and its surety, if any, unless Subcontractor, the surety, or the trustee:

(a)    Promptly cures all defaults;
(b)    Provides adequate assurance of future performance;
(c)    Compensates Contractor for actual pecuniary loss resulting from such defaults; and
(d)    Assumes the obligations of Subcontractor within the statutory time limits.

15.2.2    Interim Remedies.  If Subcontractor is not performing in accordance with the schedule of work at the time of entering an order for relief, or at any subsequent time, Contractor, while awaiting the decision of Subcontractor or its trustee to reject or to accept this Agreement and provide adequate assurance of its ability to perform hereunder, may avail itself of such remedies under this Section as are reasonably necessary to maintain the schedule of work.

Contractor may offset against any sums due or to become due Subcontractor all costs incurred in pursuing any of the remedies provided hereunder, including, but not limited to, reasonable overhead, profit and actual attorneys' fees incurred as a result of Subcontractor's non-performance.

Subcontractor shall be liable for the payment of any amount by which such expense may exceed the unpaid balance of the Contract Price.

# SECTION 16.  INDEMNIFICATION

16.1.1    Subcontractor's Performance.  With the exception that this Section 15 shall in no event be construed to require indemnification by Subcontractor to a greater extent than permitted under the public policy of the State of California, Subcontractor shall indemnify and save harmless Owner and Contractor, including their officers, agents, employees, affiliates, parents and subsidiaries and each of them, of and from any and all claims, demands, causes of action, damages, costs, expenses, actual attorneys' fees, losses or liability, in law or in equity, of every kind and nature whatsoever ("Claims") arising out of or in connection with Subcontractor's operations to be performed under this Agreement for, but not limited to:

(a)    Personal injury, including, but not limited to, bodily injury, emotional injury, sickness or disease, or death to persons, including, but not limited to, any employees or agents of Subcontractor, Owner, Contractor, or any other subcontractor and/or damage to property of anyone (including loss of use thereof), caused or alleged to be caused in whole or in part by any negligent act or omission of Subcontractor or anyone directly or indirectly employed by Subcontractor or anyone for whose acts Subcontractor may be liable regardless of whether such personal injury or damage is caused by a party indemnified hereunder.
(b)    Penalties imposed on account of the violation of any law, order, citation, rule, regulation, standard, ordinance or statute, caused by the action or inaction of Subcontractor.
(c)    Infringement of any patent rights, which may be brought against the Contractor or Owner arising out of Subcontractor's work.
(d)    Claims and liens (See Section 9) for labor performed or materials used or furnished to be used on the job, including all incidental or consequential damages resulting to Contractor or Owner from such claims or liens.
(e)    Subcontractor's failure to fulfill the covenants set forth in each subpart of Section 13, Labor Relations.
(f)    Failure of Subcontractor to comply with the provisions of Section 16.1, Casualty Insurance.
(g)    Any violation or infraction by Subcontractor of any law, order, citation, rule, regulation, standard, ordinance or statute in any way relating to the occupational health or safety of employees, including, but not limited to, the use of Contractor's or

8

other's equipment, hoist, elevators, or scaffolds (See Sections 16 and 20).

The indemnification provisions of (a) through (g) above shall extend to Claims occurring after this Agreement is terminated as well as while it is in force. Such indemnity provisions apply regardless of any active and/or passive negligent act or omission of Owner or Contractor or their agents or employees. Subcontractor, however, shall not be obligated under this Agreement to indemnify Owner or Contractor for Claims arising from the sole negligence or willful misconduct of Owner or Contractor or their agents, employees or independent contractors who are directly responsible to Owner or Contractor, or for defects in design furnished by such persons.

16.1.2   Subcontractor shall:

(a)      At Subcontractor's own cost, expense and risk, defend all Claims as defined in Section 15.1.1 that may be brought or instituted by third persons, including, but not limited to, governmental agencies or employees of Subcontractor, against Contractor or Owner or their agents or employees or any of them;

(b)      Pay and satisfy and judgment or decree that may be rendered against Contractor or Owner or their agents or employees, or any of them, arising out of any such claim; and/or

(c)      Reimburse Contractor or Owner or their agents or employees for any and all legal expense incurred by any of them in connection herewith or in enforcing the indemnity granted in this Section 15.

16.2     Risk of Loss

All work covered by this Agreement done at the site or in preparing or delivering materials or equipment, or any or all of them, to the site shall be at the risk of Subcontractor exclusively until the completed work is accepted by Contractor.

16.3     No Limitation of Liability

The indemnities set forth in this Section 15 shall not be limited by the insurance requirements set forth in Section 16.

# SECTION 17.  INSURANCE

17.1     Casualty Insurance

Subcontractor shall, at his expense, procure and maintain insurance on all of his operations, in companies acceptable to Contractor, and in accordance with Far Clause 52.0228-4502 minimum insurance required as follows:

17.1.1   Workers' Compensation and Employer's Liability Insurance. Workers' Compensation insurance shall be provided as required by any applicable law or regulation. Employer's Liability insurance shall be provided in amounts not less than:

$1,000,000 each accident for bodily injury by accident
$1,000,000 policy limit for bodily injury by disease
$1,000,000 each employee for bodily injury by disease

If there is an exposure of injury to Subcontractor's employees under the U.S. Longshoremen's and Harbor Workers' Compensation Act, the Jones Act or under laws, regulations or statutes applicable to maritime employees, coverage shall be included for such injuries or claims.

17.1.2   General Liability Insurance. Subcontractor shall carry Comprehensive General Liability or Commercial General Liability insurance covering all operations by or on behalf of Subcontractor providing insurance for bodily injury liability and property damage liability for the limits of liability indicated below and including coverage for:

(1)      Premises and operations;
(2)      Products and completed operations;
(3)      Contractual liability insuring the obligations assumed by Subcontractor in this Agreement;
(4)      Broad form property damage (including completed operations);
(5)      Explosion, collapse and underground hazards; and
(6)      Personal injury liability.

Except with respect to bodily injury and property damage included within the products and completed operations hazards, the aggregate limit, where applicable, shall apply separately to Subcontractor's work under this Agreement.

One of the following coverage forms is required:

9

- Comprehensive General Liability
- Commercial General Liability (Occurrence)
- Commercial General Liability (Claims Made)

17.1.2.1 Subcontractor shall carry a Comprehensive General Liability policy, the limits of liability shall not be less than a combined single limit for bodily injury, property damage and personal injury liability of: $1,000,000 each occurrence; $1,000,000 aggregate. Contractor, his officers, directors and employees and Owner shall be named as additional insured under the Comprehensive General Liability insurance policy. The policy shall stipulate that the insurance afforded the additional insured shall apply as primary insurance and that any other insurance carried by Contractor, his officers, directors and employees or Owner will be excess only and will not contribute with this insurance.

17.1.3   Automobile Liability Insurance.   Subcontractor shall carry automobile liability insurance, including coverage for all owned, hired and non-owned automobiles. The limits of liability shall be not less than $1,000,000 combined single limit each accident for bodily injury and property damage.

17.1.4   Certificates of insurance, as evidence of the insurance required by this Agreement, shall be furnished by Subcontractor to Contractor before any work hereunder is commenced by Subcontractor. The certificates of insurance shall provide that there will be no cancellation or reduction of coverage without thirty (30) days prior written notice to Contractor.

17.1.5   Contractor may take such steps as are necessary to assure Subcontractor's compliance with his obligations under this Section 16. In the event Subcontractor fails to maintain any insurance coverage required under this Agreement, Contractors may maintain such coverage and charge the expense to Subcontractor, or terminate this Agreement.

17.1.6   The required insurance shall be subject to the approval of Contractor, but any acceptance of insurance certificates by Contractor shall in no way limit or relieve Subcontractor of the duties and responsibilities by him in this Agreement. If higher limits or other forms of insurance are required in the Contract Documents, Subcontractor will comply with such requirements.

17.4   Failure of contractor to enforce in a timely manner any of the provisions of this Section 16 shall not act as a waiver to enforcement of any of these provisions at a later date in the performance of this Agreement. Any exceptions to the provisions of this Section 16 must be delineated in the Contract Documents.

# SECTION 18.   CLAIMS RESOLUTION PROCEDURE
18.1       Agreement to Arbitrate

All claims, disputes and matters in question arising out of, or relating to this Agreement or the breach thereof, except for claims which have been waived by the making or acceptance of final payment, shall be decided by the claims procedure, including any arbitration clause, specified in the prime contract between Contractor and Owner. In the absence of an agreement to arbitrate in the prime contract, no claims or disputes shall be arbitrated unless provided for in this Agreement or mutually agreed upon by Contractor and Subcontractor in writing.

18.2       Arbitration Procedures (if applicable)

In the event the prime contract contains an arbitration provision or if arbitration is provided for in this Agreement, the following shall apply:

18.21   Notice of Demand.   Notice of the demand for arbitration shall be filed in writing with the other party to this Agreement and shall conform to the requirements of the arbitration provision set forth in the prime contract. The demand for arbitration shall be made within a reasonable time after written notice of the claim, dispute or other matter in question has been given, and in no event shall it be made after the date when institution of legal or equitable proceedings based on such claim, dispute or other matter in question would be barred by the applicable statute of limitations.

18.2.   Award.   The award rendered by the arbitrator(s) shall be final and judgment may be entered upon it in accordance with applicable law in any court having jurisdiction.

18.2.3   Work Continuation and Payment.   Unless otherwise agreed in writing, Subcontractor shall carry on the work and maintain the schedule of work pending arbitration, and, if so, Contractor shall continue to make payments in accordance with this Agreement.

18.2.4   Consolidated Arbitration Proceedings.   To the extent not prohibited by their contracts with others, the claims and disputes

10

of Owner, Contractor, Subcontractor and other subcontractors involving a common question of fact or law shall be heard by the same 'trator(s) in a single proceeding.  In this event, it shall be the responsibility of Subcontractor to prepare and present Contractor's case, to extent the proceedings are related to this Agreement.  Should Contractor enter into arbitration with the Owner or others regarding matters relating to this Agreement, Subcontractor shall be bound by the result of the arbitration to the same degree as the Contractor.

18.2.5   No Limitation of Rights or Remedies.  This Section shall not be deemed a limitation of any rights or remedies which Subcontractor may have under any Federal or State mechanics' lien laws or under any applicable labor and material payment bonds unless such rights or remedies are expressly waived by him.

18.2.6   Jurisdictional Disputes.

a) The Subcontractor accepts and agrees to be bound by the procedural rules and regulations and decisions of the appropriate tribunals specified in the appropriate labor agreements for the settlement of jurisdictional disputes and will immediately comply with any decisions of said tribunals, which affect the performance of work covered by the Subcontract. Subcontractor agrees to bind, by written contract, all of his subcontractors of every tier to said procedural rules and regulation and decisions of said tribunals in the same manner and to the same effect as provided herein with respect to Subcontractor.

b) During the performance of Subcontractor's Work, the Subcontractor, its employees, Sub-Subcontractor's and suppliers will use such entrances to the job as maybe designated from time to time by the Contractor.

# SECTION 19.  SAFETY PRACTICES

Subcontractor shall comply fully with all laws, orders, citations, rules, regulations, standards and statutes with respect to occupational health and safety, the handling and storage of hazardous materials, accident prevention, safety equipment and practices including the accident prevention and safety program of Owner and Contractor.  Subcontractor shall conduct inspections to determine that safe working conditions and equipment exist and accepts sole responsibility for providing a safe place to work for its employees and for employees of its subcontractors and suppliers of material and equipment, for adequacy of and required use of all safety equipment and for full compliance with the aforesaid laws, orders, citations, rules, regulations, standards and statutes.

# SECTION 20.  WARRANTY

Subcontractor warrants to Owner, Architect and Contractor that all materials and equipment furnished shall be new unless otherwise specified and that all work under this Agreement shall be of good quality, free from faults and defects and in conformance with the Contract Documents.  All work not conforming to these requirements, including substitutions not properly approved and authorized, may be sidered defective.  The warranty provided in this Section 19 shall be in addition to and not in limitation of any other warranty or remedy required by law or by the Contract Documents.

# SECTION 21.  USE OF CONTRACTOR'S EQUIPMENT

In the event Subcontractor shall use Contractor's equipment, materials, labor, supplies or facilities, Subcontractor shall reimburse Contractors at a predetermined rate, except as provided in Section 14.1.2 or as otherwise stated herein.  Subcontractor assumes all responsibility for physical damage to such equipment, materials, labor, supplies, or facilities used by Subcontractor, Subcontractor shall have full responsibility for all acts or omissions of Contractor's employees with regard to Subcontractor's use or employment of them. Subcontractor accepts any and all of Contractor's equipment, materials, labor, supplies or facilities as furnished.  Subcontractor shall also indemnify Contractor, General Contractor and Owner to the same extent as listed in Section 15 above.

# SECTION 22.  ASSIGNMENT OF CONTRACT

Subcontractor shall not, without written consent of Contractor, assign, transfer, or sublet any portion or part of the work required by this Agreement, or assign any payment hereunder to others.

# SECTION 23.  INDEPENDENT CONTRACTOR

Subcontractor is an independent contractor and shall, at his sole cost and expense, and without increase in the Contract Price, comply with all laws, rules, ordinances and regulations of all governing bodies having jurisdiction over the work; obtain all necessary permits and licenses therefore, all USA layout Permits (for any Underground Work, separate from Contractors USA permit or layout), pay all manufacturers' taxes, sales taxes, use taxes, processing taxes, and all federal and state taxes insurance and contributions for social security and unemployment which are measured by wages, salaries, or other remunerations paid to Subcontractor's employees, whether levied under existing or subsequently enacted laws, rules or regulations.  Subcontractor, upon request, shall furnish evidence satisfactory to Contractor that any or all of the foregoing obligations have been fulfilled.

# SECTION 24.  CLEAN-UP

At all times during the course of construction, Subcontractor shall perform his work so as to maintain the site in a clean, safe and orderly condition.  Upon completion of the work under this Agreement, Subcontractor shall remove from the site all hazardous materials, temporary structures, debris and waste incident to his operation and clean all surfaces, fixtures, equipment, etc, relative to the performance of

this Agreement.

**SECTION 25.  ATTORNEYS' FEES**

In the event the parties become involved in litigation or arbitration with each other arising out of this Agreement or other performance thereof in which the services of an attorney or other expert are reasonably required, the prevailing party shall be fully compensated for the cost of its participation in such proceedings, including the cost incurred for attorneys' fees and experts' fees. Unless judgment goes by default, the attorneys' fee award shall not be computed in accordance with any court schedule, but shall be such as to fully reimburse all attorneys' fees actually incurred in good faith, regardless of the size of a judgment, it being the intention of the parties to fully compensate for all attorneys' fees and experts' fees paid or incurred in good faith.

**SECTION 26.  LABOR AGREEMENTS** (List labor agreements to which Contractor is signatory or enter NONE if Contractor has no labor agreements.)

**SECTION 27.  SPECIAL PROVISIONS** (Including unit pricing, if applicable)

Subcontractor shall not enter any job site until K.O.O Construction has received the appropriate insurance certificates according to Section 16 of this Subcontract Agreement.

**CONTRACTORS ARE REQUIRED BY LAW TO BE LICENSED AND REGULATED BY THE CONTRACTORS STATE LICENSE BOARD.  ANY QUESTIONS CONCERNING A CONTRACTOR MAY BE REFERRED TO THE REGISTRAR OF THE BOARD, WHOSE ADDRESS IS:**

Contractors State License Board
Post Office Box 26000
Sacramento, California 95826

Dated: November 1t 2012

CONTRACTOR: K.O.O. CONSTRUCTION INC

By _____

Keith O. Odister

2510 Boatman Avenue, Suite B

West Sacramento, CA 95691
(Address)

560169
(Contractor's License No.)

Dated: NOVEMBER 5, 2012

SUBCONTRACTOR: C&T Welding Inc

By: _____

9005 Langes Hill Dr (P.O. Box 258)

New Castle, CA 95658
(Address)

855966
(Contractor's License No.)

**C&T Welding, Inc.**
**9005 Langes Hill Dr**
**P.O. Box 258**
**Newcastle Ca 95658**
**Office 916 663 1260**
**Fax # 916 663 1325**
**CL# 855966**

## Proposal And Acceptance

**Proposal Submitted to:** T.T.C.S
**Street:** 2510 Boatman Ave
**City, State:** West Sacramento CA.
**Architect:** HMC

**Date:** 09/28/12
**Job Name:** Building B 500 2
**Location:** L A CA
**Date of plans:** 2/5/2012

**We hereby submit specifications and estimates for:**
We are pleased to present our bid proposal for this project. Our proposal is in accordance with the latest edition of the AISC code of standards for the construction of steel buildings and bridges. This proposal and the attachments shall become a part of our contract if we are awarded the contract. Please feel free to contact me with any questions regarding our bid.
Sincerely,

Chuck DeLucci

**To fabricate and Install the following item:**

Structural steel framing per SS210.1

Pipe columns per SS210.1

Wide flange beams at existing framing per SS210.1

Structural steel framing per SS210.2

Channel facia per SS210.2

Wide flange beams per SS210.2

Tube steel braces per SS210.2

Angle framing per SS210.2

Metal deck per SS210.2

AESS Finish as noted

Structural steel supports at operable partition per SS602

Angle hangers per SS602

Angle braces per SS602

Channel beams per SS602

New structural steel at existing screen per SS603

Tube steel extensions at TS post per SS603

Tube steel post per SS603

Tube headers per SS603

**Surface finish:**

One standard coat of shop primer

**F.O.B Items:   N/A**

**Qualifications:**

This proposal is based on obstruction free access inside building to install new structural steel to existing steel.

**Exclusions:**

Demolition of any existing steel

**\*\*Because of ongoing steel shortages, rising prices and short pricing commitments from our suppliers, C&T Welding, Inc. can only honor this proposal until 10/29/12.   If awarded this project and released by you to place our material orders by 10/29/12, material pricing will remain unchanged, excluding any future changes to the contract or materials not included in our initial order due to missing design information.**

**We Propose hereby to furnish material and labor — complete in accordance with above specifications, for the sum of: Two Hundred Ninety Eight Thousand Eight Hundred dollars and no cents. ($ 298,000.00)**

**Payment Terms:   Net 30 days with monthly progress payments from date of invoice on material received in our yard and labor performed with 10% retention allowed. Retention to be paid in full no later than 60 days after steel is installed .**

All material is guaranteed to be as specified. All work to be completed in a workman like manner according to AISC Code of Standard Practices. Any alteration or deviation from above specifications involving extra costs will be executed only upon written orders, and will become an extra charge over and above the estimate. All agreements contingent upon strikes, accidents or delays beyond our control. Owner  to carry fire, tornado, and other necessary insurance. Our workers are fully covered by Workmen's Compensation Insurance.

Authorized Signature: _____

**Standard Exclusions:**
Nonferrous materials, i.e., stainless steel, aluminum, brass, bronze, ect.
Any items not identified or sized or details not shown on drawings.
Any items shown or called for on a civil, mechanical, plumbing, electrical or landscape drawings.
Engineering calculations and stamps.
Surveys
Costs of bonds, permits or special insurance not specified in contract documents.
Premium pay for overtime.
Down time and loss of productivity due to interference caused by others.
Welding inspection costs, third party inspections, cost of deputy inspector (if required) and other inspections.
Any costs associated with welds that have to be qualified by procedure.
Safety planking for openings.
Demolition, modification or reinstallation to accommodate the work for other trades.
Hoisting for other trades, except decking as clarified below.
Liquidated damages unless specifically due to our negligence.
Jobsite electrical power.
Haz-mat work and handling.
Toe boards.
Gutters and downspouts.
Field dimensioning or surveying of anchor bolts.
Engineered sealed joist placement drawings. We will provide sealed design calculations and unsealed placement drawings.
Deviation from approved drawings by general contractor or his/her representative, costs for discrepancies between architectural and structural construction documents.
Rebar and mesh.
All items embedded in precast concrete.
Light gauge structural framing.
Steel or craftwork used by other trades, including angle clips, fasteners, bracing, guying, deck reinforcing angle.
Precast concrete connections in precast and loose.
Precast concrete erection hardware.
Sheet metal 10 gauge or lighter.
Metal sash and/or mullions.
Unistrut.

Pipe sleeves for other trades.
Field measuring or verification.
Safety railing, guards or nets
Wood drilling and/or bolting.
Field painting, slagging, wire brushing or touch up of deck welds other than top side of
    deck not encased in concrete.
Touch up priming before and after steel erection.
Finish painting and/or finish touch up painting.
Cutting of deck at mechanical openings.
All Simpson products.
Traffic control.
Dust control.
Fire watch.
Scaffolding.
Shoring.
Core drilling.
Chain link fence and gates.
Signage post and post sleeves.
Standing seam metal roof and accessories.
Grout and grouting under base plates
Concrete fill and reinforcing for stair treads, landings, pipe bollards, etc..
Fabric awnings and support.
Aluminum awnings and supports.

**Additional Clarifications.**
Latest edition of ASIC Standard Practice.
Design drawings must be complete and final prior to detailing. Any changes may cause
    delays in schedules and have an impact on cost.
C&T Welding Inc. expects uninterrupted access to enough work area so required work
    can be completed within the allowable time.
Timely inspections of field work while erecting crew is on site.
Punch list items shall be addressed while erecting crew is on site.
Steel erector is to be allowed to erect all structural steel in one (1) continuous,
    uninterrupted  operation (per AISC). Return trips will be billed at **$1500** each, not
    including major equipment rental (crane, forklift, etc.)
All areas in which erecting equipment must operate are assumed to be suitable in design
    to support the equipment. All planking, matting, shoring or other protection required is
    to be designed, furnished, installed, maintained and removed by others.
All work to comply with current OSHA safety regulations. More stringent safety policies
    for the project may result in price revisions.
Standard insurance requirements. Any insurance requirements beyond standard limits
    will be reviewed and charged accordingly.
Overhead wires and above ground obstructions, which may interfere with the access and
    erection, shall be removed by others prior to commencement of erection.
All work to be performed during a standard work week. No overtime is allowed in our
    proposal.

General contractor will provide and maintain a clear, level, firm, all-weather site suitable for the operation of cranes and trucks.

All sanitary facilities by others.

Any required protections such as coverings for exposed rebar, open trenches, screens for sidewalks, streets and adjacent building construction to be furnished, installed, maintained and removed by others.

Deck will be hoisted to the proper height if received and positioned in place while crane is in reach.

All lighting for night time work to be by others.

Parking and transportation costs for on-site workers to be made available by others.

All structural steel will be plumb and true at the completion of erection. Any adjustments that become necessary due to changes caused by others will be repaired at additional costs.

**Acceptance of Proposal** - The above prices, specifications and conditions are satisfactory and are hereby accepted. You authorize C&T Welding Inc. to do the work as specified and also agree to the Terms and Conditions outlined on the attached page.

Signature: _____   Date of Acceptance: _____

**C&T Welding, Inc.**
**9005 Langes Hill Dr**
**P.O. Box 258**
**Newcastle Ca 95658**
**Office 916 663 1260**
**Fax # 916 663 1325**
**CL# 855966**

## Proposal And Acceptance

Proposal Submitted to: T.T.C.S        Date: 09/28/12
Street: 2510 Boatman Ave        Job Name: Building B 500 2
City, State: West Sacramento CA.        Location: L A CA
Architect: HMC        Date of plans: 2/5/2012

**We hereby submit specifications and estimates for:**
We are pleased to present our bid proposal for this project. Our proposal is in accordance
with the latest edition of the AISC code of standards for the construction of steel
buildings and bridges. This proposal and the attachments shall become a part of our
contract if we are awarded the contract. Please feel free to contact me with any questions
regarding our bid.
Sincerely,

Chuck DeLucci

**To fabricate and Install the following item:**

Structural steel framing per SS210.1

Pipe columns per SS210.1

Wide flange beams at existing framing per SS210.1 .

Structural steel framing per SS210.2

Channel facia per SS210.2

Wide flange beams per SS210.2

Tube steel braces per SS210.2

Angle framing per SS210.2

Metal deck per SS210.2

ABSS Finish as noted

Structural steel supports at operable partition per SS602

Angle hangers per SS602

Angle braces per SS602

Channel beams per SS602

New structural steel at existing screen per SS603

Tube steel extensions at TS post per SS603

Tube steel post per SS603

Tube headers per SS603

**Surface finish:**

One standard coat of shop primer

**F.O.B Items:**  N/A

**Qualifications:**

This proposal is based on obstruction free access inside building to install new structural steel to existing steel.

**Exclusions:**

Demolition of any existing steel

**\*\*Because of ongoing steel shortages, rising prices and short pricing commitments from our suppliers, C&T Welding, Inc. can only honor this proposal until 10/29/12.  If awarded this project and released by you to place our material orders by 10/29/12, material pricing will remain unchanged, excluding any future changes to the contract or materials not included in our initial order due to missing design information.**

**We Propose hereby to furnish material and labor — complete in accordance with above specifications, for the sum of: Two Hundred Ninety Eight Thousand Eight Hundred dollars and no cents. ($ 298,000.00)**

**Payment Terms:**   Net 30 days with monthly progress payments from date of invoice on material received in our yard and labor performed with 10% retention allowed. Retention to be paid in full no later than 60 days after steel is installed .

All material is guaranteed to be as specified. All work to be completed in a workman like manner according to AISC Code of Standard Practices. Any alteration or deviation from above specifications involving extra costs will be executed only upon written orders, and will become an extra charge over and above the estimate. All agreements contingent upon strikes, accidents or delays beyond our control. Owner to carry fire, tornado, and other necessary insurance. Our workers are fully covered by Workmen's Compensation Insurance.

Authorized Signature: _____

**Standard Exclusions:**
Nonferrous materials, i.e., stainless steel, aluminum, brass, bronze, ect.
Any items not identified or sized or details not shown on drawings.
Any items shown or called for on a civil, mechanical, plumbing, electrical or landscape drawings.
Engineering calculations and stamps.
Surveys
Costs of bonds, permits or special insurance not specified in contract documents.
Premium pay for overtime.
Down time and loss of productivity due to interference caused by others.
Welding inspection costs, third party inspections, cost of deputy inspector (if required) and other inspections.
Any costs associated with welds that have to be qualified by procedure.
Safety planking for openings.
Demolition, modification or reinstallation to accommodate the work for other trades.
Hoisting for other trades, except decking as clarified below.
Liquidated damages unless specifically due to our negligence.
Jobsite electrical power.
Haz-mat work and handling.
Toe boards.
Gutters and downspouts.
Field dimensioning or surveying of anchor bolts.
Engineered sealed joist placement drawings. We will provide sealed design calculations and unsealed placement drawings.
Deviation from approved drawings by general contractor or his/her representative, costs for discrepancies between architectural and structural construction documents.
Rebar and mesh.
All items embedded in precast concrete.
Light gauge structural framing.
Steel or craftwork used by other trades, including angle clips, fasteners, bracing, guying, deck reinforcing angle.
Precast concrete connections in precast and loose.
Precast concrete erection hardware.
Sheet metal 10 gauge or lighter.
Metal sash and/or mullions.
Unistrut.

Pipe sleeves for other trades.
Field measuring or verification.
Safety railing, guards or nets
Wood drilling and/or bolting.
Field painting, slagging, wire brushing or touch up of deck welds other than top side of
    deck not encased in concrete.
Touch up priming before and after steel erection.
Finish painting and/or finish touch up painting.
Cutting of deck at mechanical openings.
All Simpson products.
Traffic control.
Dust control.
Fire watch.
Scaffolding.
Shoring.
Core drilling.
Chain link fence and gates.
*Signage post and post sleeves.*
Standing seam metal roof and accessories.
Grout and grouting under base plates
Concrete fill and reinforcing for stair treads, landings, pipe bollards, etc..
Fabric awnings and support.
Aluminum awnings and supports.

**Additional Clarifications.**
Latest edition of ASIC Standard Practice.
Design drawings must be complete and final prior to detailing. Any changes may cause
    delays in schedules and have an impact on cost.
C&T Welding Inc. expects uninterrupted access to enough work area so required work
    can be completed within the allowable time.
Timely inspections of field work while erecting crew is on site.
Punch list items shall be addressed while erecting crew is on site.
Steel erector is to be allowed to erect all structural steel in one (1) continuous,
    uninterrupted operation (per AISC). Return trips will be billed at $1500 each, not
    including major equipment rental (crane, forklift, etc.)
All areas in which erecting equipment must operate are assumed to be suitable in design
    to support the equipment. All planking, matting, shoring or other protection required is
    to be designed, furnished, installed, maintained and removed by others.
All work to comply with current OSHA safety regulations. More stringent safety policies
    for the project may result in price revisions.
Standard Insurance requirements. Any insurance requirements beyond standard limits
    will be reviewed and charged accordingly.
Overhead wires and above ground obstructions, which may interfere with the access and
    erection, shall be removed by others prior to commencement of erection.
All work to be performed during a standard work week. No overtime is allowed in our
    proposal.

General contractor will provide and maintain a clear, level, firm, all-weather site suitable for the operation of cranes and trucks.

All sanitary facilities by others.

Any required protections such as coverings for exposed rebar, open trenches, screens for sidewalks, streets and adjacent building construction to be furnished, installed, maintained and removed by others.

Deck will be hoisted to the proper height if received and positioned in place while crane is in reach.

All lighting for night time work to be by others.

Parking and transportation costs for on-site workers to be made available by others.

All structural steel will be plumb and true at the completion of erection. Any adjustments that become necessary due to changes caused by others will be repaired at additional costs.

**Acceptance of Proposal** - The above prices, specifications and conditions are satisfactory and are hereby accepted. You authorize C&T Welding Inc. to do the work as specified and also agree to the Terms and Conditions outlined on the attached page.

Signature: _____ Date of Acceptance: _____

EXHIBIT "2"

# *SUBCONTRACT AGREEMENT*

SUBCONTRACT# ct101

**C & T Welding Inc.,** by this document, enters into a LUMP SUM SUBCONTRACT AGREEMENT with Basic Metals Industries as of , 12/12/12 for the work described as follows:

The project: , **C & T Welding Inc.** job No. located at . The project's General Contractor is K.O.O. Construction Inc., located at 2510 Boatman Ave Suite B West Sacramento Ca. 95691-3816. Basic Metals Industries is to be bound by the Subcontracts between **C & T Welding Inc**, Inc. and , K.O.O. Construction Inc./Total Team Construction Inc. as applicable to its work and operations.

**RECITALS:**

This agreement shall not be effective for any purpose, and Subcontractor is not authorized to perform any work, until each party is in possession of a copy signed by the other party.

**CONTRACT DOCUMENTS:** This Subcontract agreement includes the following attachments. K.O.O. Construction Inc. Contracts: No.W912-PL-12-C-0020

PROJECT # 691-12-103

Renovate Inpatient Mental Health Ward

VA Greater Los Angeles Health Care

Los Angeles County

**Total Team construction Services Inc.:** VA 261-11-RP-0274

Consolidate and Expansion of Outpatient MH,

2

VA Martinez dated 10/9/12

**SCOPE OF WORK:**

All fabricated steel, fasteners, as well as drawings, instructions, and other documents required to complete the work are furnished by **C & T Welding Inc.** Basic Metals Industries will furnish all labor, equipment, and consumables, including gases, electrodes, and tools necessary to complete installation of the work. Work is further defined in Attachment "subcontract from KOO Construction Inc. for LA VA Inpatient Mental Health Ward" " Total Team Construction Services Inc. Letter of Intent and C & T Welding proposal for Expansion of Outpatient MH, VA Martinez"

A City business license if required(In the cities where the projects is located) will be procured by at its own expense.

All testing and inspection will be paid for by others, with the exception of retesting required due to workmanship of Basic Metals Industries.

Basic Metals Industries shall provide to the testing agency all weld procedures and welder's certifications in accordance with AWS, local Building Codes, and the project specifications.

Basic Metals Industries acknowledges that it has carefully examined and studied the Contract Documents in their entirety, inasmuch as the work of the various subcontractors is interrelated, and Basic Metals Industries fully understands the character of the work to be performed by it under the Contract Documents. Basic Metals Industries enters into this Agreement relying on its own information and investigation and not on any statements or representations that may have been made by Owner, General Contractor, **C & T Welding Inc.**, Architect or other third parties. Basic Metals Industries has inspected the building site where the work is to be done and has examined and read the Contract Documents referring to the Project and it bases its contract price solely on said inspection and examination. Basic Metals Industries shall be obligated to perform the Work in strict compliance with the Contract Documents and all applicable laws, ordinances, regulations, as well as the provisions of this Agreement, in a satisfactory and timely manner. Nothing in the Contract Documents shall be construed to create a contractual relationship between persons or entities other than the parties to this Agreement, to wit, **C & T Welding Inc.** and Basic Metals Industries.

Exclusions: Steel Detailing

3

**Metal Deck**                                    2

**SAFETY:**



ERECTOR RESPONSIBILITY

Basic Metals Industries, shall maintain its own Safety and Illness and Injury Prevention program, which complies with, at a minimum, Federal OSHA and CAL-OSHA regulations.  is expected to comply with its program while on site as well as any other site specific Safety and Illness and Injury Prevention program.  A copy of written safety program shall be available on site at all times.  Copies of jobsite safety meeting minutes will be forwarded to **C & T Welding Inc** on a weekly basis.

If this structure exceeds the height of 36 feet, is responsible to provide its own OSHA permit for the project.

Basic Metals Industries shall defend, indemnify, and hold harmless **C & T Welding Inc**. against any fines, damages, penalties, assessments, or expenses, including without limitation attorneys' fees, for the noncompliance with any safety standard of Subcontractor or any of Subcontractor's agents, employees, or subcontractors.

Basic Metals Industries shall notify **C & T Welding Inc**. immediately following any accident, promptly confirm the notice in writing, and furnish a detailed written report to **C & T Welding Inc**.

**INSURANCE:**

Minimum insurance requirements are as follows:  One Million Dollars General Liability, PL and PD, naming **C & T Welding Inc., and** , as additional insured.

Workmen's compensation Insurance, in at least the statutory limits.

Insurance carrier is to be rated at least "A" by A.M. Best company.

Basic Metals Industries shall secure and maintain, at its own expense and in companies satisfactory to C & T Welding Inc. the following insurance coverage:

1. Basic Metals Industries is advised that the Agreement requires, among other things, that an insurance endorsement be provided to us by your insurance company naming **C & T Welding Inc**, as an additional insured and guaranteeing that 30 days' notice will be provided to us in the event of cancellation or deduction in coverage. The standard "ACORD 25" Certificate which many insurance companies attempt to furnish for this purpose is <u>not</u> satisfactory to us because it specifies that the insurance company has no obligation other than to "endeavor" to mail such notice. If the standard clause in the ACORD form is modified by the insurer as follows (and initialed by the authorized representative), we will accept it:

Cancellation: Should any of the above-described policies be canceled before the expiration date thereof, the issuing company will mail 30 days Prior Written Notice to the below-named certificate holder.

2. In order to meet the requirements of the Agreement, the ACORD 25 Certificate must be accompanied by an endorsement to your policy, executed by your insurer, evidencing (a) that **C & T Welding Inc**. has been added as an additional insured, and (b) that your insurance is primary and any other insurance is "excess and non-contributing."

Basic Metals Industries Certificates of insurance affording evidence of the above requirements shall be delivered to **C & T Welding Inc**. prior to commencement of performance under this contract and maintained in full force and effect throughout this contract and for one year following completion of the Work.

The requirements for the foregoing insurance shall not derogate from the provisions for indemnification of **C & T Welding Inc**. by subcontractor under this Agreement. Basic Metals Industries shall be bound by the Special Insurance Requirements set forth at the end of this Agreement.

If Basic Metals Industries fails to secure and maintain the required insurance, **C & T Welding Inc**. shall have the right (without any obligation to do so, however) to secure same in the name of and for the account of Subcontractor, in which event Subcontractor shall pay the cost thereof and shall furnish, upon demand, all information that may be required in connection therewith.

**INDEMNIFICATION:**

Basic Metals Industries agrees to assume entire responsibility and liability for all damages or injury to all persons and property, including loss of use, arising from or connected with the execution of the work covered in this agreement.  shall defend and indemnify Contractor, Owner, and **C & T Welding Inc.** and its agents and employees from and against all such claims, damages, losses, and expenses, including claims for which those parties may be claimed to be liable, and legal fees and disbursements paid or incurred to defend any such claims to enforce these provisions.  This shall not apply to claims, losses, or damages arising from the sole negligence or willful misconduct of, or defects in the design furnished by, the party or parties to be indemnified.

**REMEDIES:**

If Basic Metals Industries defaults, fails to perform, or becomes delinquent in payments to employees, subcontractors, vendors, or payments to any employee benefit fund or trust, and within forty-eight hours after receipt of written notice to correct the situation, has failed to correct the situation, **C & T Welding Inc.** may make good on those payments and deduct those costs from payments due .

**TERMINATION:**

If Basic Metals Industries defaults, or neglects to carry out the work in accordance with the terms of this agreement, **C & T Welding Inc.** may after forty-eight (48) hours written notice to  and without prejudice to any other remedy available, terminate this agreement.  72 Business Hoves (3 days)

**SCHEDULE:**

Mobilization is to take place on or about .  Completion of the work is to be accomplished by , barring any unforeseen conditions, which prevent the completion of the work. **C & T Welding Inc.** may request to provide

~~additional crews and equipment to accelerate the project at no additional expense so long as overtime costs are not incurred.~~ In the event overtime is requested, the costs will be paid by **C & T Welding Inc.** to in accordance with labor and equipment rates.

*C & T should not Determine Schedule on Accelerated Schedule.*

**PAYMENT:**

*No Mention of when BMI gets Paid.*

Basic Metals Industries will forward to **C & T Welding Inc.**, no later than the 15th of each month, an invoice reflecting the billing for that month projected through the end of that month. The billing must be an accurate reflection of the work accomplished on site. The billing will be accompanied by a Conditional Waiver and Release of Lien for the work projected on that billing, from and each of their suppliers, subcontractors, and any party having lien rights on the project. Retention will be 10% and will be paid as soon as it is received from the Owner. No payments will be made until this Subcontract Agreement is executed.

Upon receipt of payment for that month, and prior to receipt of payment for subsequent billings, Unconditional Waiver and Release of Liens must be received by **C & T Welding Inc.** covering all pervious payments.

**EXTRA WORK:**

*1- How Involved will C & T be Regarding Job? If we Have C.O.R, How will they Respond? I.E- Job site visit, Response time?*

From time to time, work not covered in this initial agreement will be required on site. Prior to performance of this work, regardless of the cause of the work, Basic Metals Industries will contact the appropriate personnel at **C & T Welding Inc.** and obtain authorization to perform this work. Extra work will require written authorization from **C & T Welding Inc.** prior to proceeding. Any work performed by erector without proper approval is done at erectors own risk. Additionally all extra work performed must be verified in writing by the **C & T Welding Inc.**/General Contractor, extra work tickets must be completed and received by **C & T Welding Inc.** daily, with detailed descriptions of work, time, equipment, cause, etc. Change Order Requests /Billings must be accompanied by the proper backup and must be submitted in a timely manner (within one week of completion of such work) to be considered for payment.

Remedial work performed on-site for steel that is incorrectly detailed and/or fabricated when authorized and acknowledged by fabricator shall be performed at erectors "base-rate" without mark-up.   *No*

Payment for extra work will be under the same terms as subcontract work except as noted in the following: Extra work shall not be invoiced until final approval is received. Extra work must be invoiced separately from the base contract

*No Retention on Change Orders?*

**BREACH BY SUBCONTRACTOR:**

The following acts or omissions of the Basic Metals Industries shall be deemed a breach of this Agreement by the Basic Metals Industries:

    (a)    Filing or having filed against it, a petition under the Bankruptcy Code;

    (b)    Making a general assignment for the benefit of creditors:

    (c)    Failing to pay bills when due or becoming insolvent;

    (d)    Failing to provide properly skilled workmen or proper materials:

    (e)    Failing to make prompt payment to material men or laborers; or

    (f)    Breaching any other provision of this Agreement.

If the unpaid balance of the contract price shall exceed the expense of finishing the Work, including, but not limited to:  expense for additional managerial and administrative services, reasonable overhead, profit, and attorney fees and costs, C & T Welding Inc. shall pay to Basic Metals Industries the amount by which said unpaid balances exceeds such expense; if, however, such expense exceeds such unpaid balance, Basic Metals Industries shall promptly pay to C & T Welding Inc, Inc. the amount by which such expense exceeds such unpaid balance.

**REVISIONS TO CONTRACT DOCUMENT:**

C & T Welding Inc, Inc. shall give written notice of any change or revisions to the contract Documents to Basic Metals Industries, and thereupon, Basic Metals Industries and C & T Welding Inc, Inc. shall determine whether any adjustment in payments to Basic Metals Industries is warranted as a result of such revisions.

## LABOR:

Basic Metals Industries warrants and agrees that all labor and materials necessary to properly complete the Work are included in the above price. There shall be no additional compensation for extra labor and materials furnished unless said extras are previously agreed to in writing.

## ASSIGNMENT:

Subcontract shall not, without the prior written consent of **C & T Welding Inc**.:

(a)   Assign or subcontract, in whole or in part, the performance of his obligations hereunder:

(b)   Sublet or otherwise transfer the performance of said obligations; nor

(c)   Assign any monies due or to become due to Subcontractor hereunder.

(d)   **C & T Welding Inc understands the field installation of the contract work may be performed by an outside erector.**

## INSPECTION OF WORK:

C & T Welding Inc. shall inspect the Work following the presentation to C & T Welding Inc. of invoices from the Subcontractor for work performed. No payment hereunder nor lapse of time shall be construed as an acceptance by C & T Welding Inc. of the Work. The entire Work is to be subject to the inspection and approval of C & T Welding Inc., city and county inspectors while in process and at the time when it shall be claimed by Subcontractor that the Work has been fully completed.  How?

## GOVERNING LAW AND JURISDICTION:

This Agreement will in all respects be interpreted and construed in accordance with and governed by the internal laws of the State of California. Any action or proceeding brought by either party against the other in connection with this Agreement must be commenced in either a federal court located in Sacramento California.

## SUBCONTRACT AMOUNT:

C & T Welding Inc. agrees to pay for the work described herein, the sum of $918,957.00.

Including all applicable taxes of any nature whatsoever.

Basic Metals Industries agrees to pay C & T Welding Inc. $35,000.00 fee for Contract work received in this agreement with execution of contract.

This sum may be adjusted by mutually agreed upon additions or deletions as the subcontract is carried out.

C & T Welding Inc.

By:_____     Date_____

    Chuck Delucci, President

**Basic Metal Industries**

By:_____     Date_____

    Chris Holly, President

--
**Mark A. McClelland**
**Owner / Chief Estimator**
**Complete Steel Estimating, LLC**
**Tel (480) 437-4154**

EXHIBIT "3"

# Statement

Basic Metals Industries, LLC
115 N 51st Ave
Phoenix, AZ 85043

| Date |
|------|
| 8/26/2015 |

| To: |
|-----|
| K.O.O.
2510 Boatman Avenue
Suite H
West Sacramento  CA 95821 |

| Amount Due | Amount Enc. |
|------------|-------------|
| $214,167.24 | |

| Date | Transaction | Amount | Balance |
|------|-------------|--------|---------|
| 12/31/2012 | Balance forward | | 0.00 |
| | 1302 - Renovate Inpatient Mental Health W- | | |
| 02/25/2013 | INV #0812-2638. Due 04/24/2013. | 21,137.50 | 21,137.50 |
| 04/24/2013 | PMT #2373. | -21,137.50 | 0.00 |
| 06/20/2013 | INV #0812-2655. Due 06/20/2013. | 142,946.50 | 142,946.50 |
| 07/19/2013 | INV #0812-2665. Due 07/19/2013. | 34,466.00 | 177,412.50 |
| 08/09/2013 | PMT #2013 22100 40000. | -142,946.50 | 34,466.00 |
| 08/21/2013 | INV #0813-2679. Due 08/21/2013. | 26,600.00 | 61,066.00 |
| 09/24/2013 | INV #0913-2702. Due 09/24/2013. | 34,675.00 | 95,741.00 |
| 11/25/2013 | INV #1113-2752. Due 11/25/2013. | 21,992.50 | 117,733.50 |
| 05/06/2014 | INV #1414-2818. Due 05/06/2014. | 96,433.74 | 214,167.24 |

| CURRENT | 1-30 DAYS PAST DUE | 31-60 DAYS PAST DUE | 61-90 DAYS PAST DUE | OVER 90 DAYS PAST DUE | Amount Due |
|---------|--------------------|--------------------|--------------------|-----------------------|------------|
| 0.00 | 0.00 | 0.00 | 0.00 | 214,167.24 | $214,167.24 |

EXHIBIT "4"

---

## NOTICE TO CONTRACTOR ON FEDERAL PUBLIC WORKS PROJECT
### (Miller Act, 40 U.S.C. SECTION 270a - 270e)

---

TO:     K.O.O. Construction, Inc., hereinafter "general or original contractor", whose

address is: 2510 Boatman Avenue, Suite B  West Sacramento, CA  95691.

PLEASE TAKE NOTICE that the undersigned claimant has furnished:

Structural Steel Fabrication to C & T Welding – 9005 Langes Hill Drive  New Castle, CA 95658,

hereinafter "Sub-Contractor", on that certain federal public works project commonly known as Renovate

Inpatient Mental Health Ward - VA Greater Los Angeles Healthcare System, Building 500B, located at

11301 Wilshire Blvd  Los Angeles, CA   further described as Contract Number: W912PL-12-C-0020

Project Number 691-12-103   Bond Company: Travelers Casualty & Surety Company of America

One Tower Square  Hartford, CT  06183  Bond# 105797405.

The amount and value of such labor, equipment, material, supplies and/or services furnished to

the subcontractor  is the sum of $289,451.00, after deduction of offsets and credits.

Demand is hereby made upon you for payment of the sum of  $289,451.00.

Date:    09-04-14

Claimant: Basic Metals Industries

By: _Laura Hobbs_

Laura Hobbs   Authorized Agent

CERTIFIED MAIL

K.O.O. Construction, Inc.
7013 2630 0000 2291 8675

Travelers Casualty & Surety Company of America
7013 2630 0000 2291 8682

Lesron Insurance
7013 2630 0000 2291 8699

MAN/01

Form Provided by: BEARD HOBBS, ATTORNEY AT LAW
1014 BROADWAY, SUITE A  EL CAJON, CA  92021  (619) 201-8467
COPYRIGHT 1997, BEARD HOBBS, ATTORNEY AT LAW